BROWN ET AL. v. BROWN ET AL.

1. **Execution**: SALE OF LAND OWNED BY ONE NOT A PARTY: PAYMENT OF HIS DEBT: SUBROGATION.   A. and B. each owned an undivided two-fifths of two tracts of land, and they owed a joint debt to C., and another joint debt to D.   They united in mortgaging their four-fifths interest in one tract to C., and in the other tract to D. Subject to these mortgages, A. also mortgaged his two-fifths interest in both tracts, and some other land, to E.   C. and D.   Each had a decree of foreclosure, and the attorneys, in preparing the decree in foreclosing E.'s mortgage, conceived the idea that all three decrees could be satisfied by one sale, and they accordingly drew it so as to provide that there should be first sold the four-fifths of the one tract, and the proceeds applied, first, in payment of C., and any excess in payment of E., and that there should then be sold the undivided four-

fifths of the other tract, and the proceeds applied, first, to the payment of D., and any excess in the payment of E.; and a sale was made accordingly, and E. was the purchaser. *Held* that, as B. was not a party to the decree under which the sale was made, his two-fifths could not be affected thereby, even though the sale was to pay his own debt; but that, since by the sale E. had paid the debts of A. and B. to C. and D., equity required that the whole sale be set aside, and that E. be subrogated to the rights of C. and D. under their decrees against A. and B.

*Appeal from Louisa District Court*—HON. A. H. STUTS-
MAN, Judge.

WEDNESDAY, DECEMBER 14.

ACTION for an injunction to restrain the defendant J. C. Smith from executing a sheriff's deed in such a way as to purport to cover more than two-fifths of certain real estate. The defendant James Brown was the purchaser at the execution sale, and is the holder of the certificate of sale. He files a cross-petition, and prays that, if the conveyance by sheriff's deed be limited to two-fifths of the property, the sale be set aside, and he be decreed to be the owner by subrogation of certain judgments which were satisfied in form by money paid by him in pursuance of the sale. The court rendered a decree virtually setting aside the sale, and granting the defendant the relief prayed for by him in his cross-petition. The plaintiff appeals.

*Power & Huston*, for appellant.

*Newman & Blake*, for appellee.

ADAMS, CH. J.—The controversy in this case grows out of an irregularity in the foreclosure of a mortgage, and of a sale made in pursuance thereof. The decree provides for the sale of a larger interest than was covered by the mortgage. It provides for the sale of four-fifths of certain land, while the mortgagor owned only two-fifths, and the decree was so drawn as to lead to an inference that the intention was that a two-fifths interest belonging to the plaintiff should

be sold in connection with the mortgagor's interest. The defendant brings this action for the purpose of limiting the conveyance expressly by its terms to the two-fifths interest owned by the mortgagor, in order that no cloud may be cast upon his own interest, or his title be in any way embarrassed. The irregularity grew out of a desire on the part of attorneys to accomplish by one execution sale what could not properly be thus accomplished. The mortgagor in the mortgage foreclosed, as above mentioned, was one Joshua Brown. He and the plaintiff J. K. Brown each owned an undivided two-fifths of the tracts. They owed a joint debt to one Dee, and another joint debt to one Boner. They united in mortgaging their four-fifths interest in one tract to Dee, and in the other tract to Boner. Dee and Boner had each obtained a decree of foreclosure. The mortgage in question, under which the sale was made, was executed to James Brown by Joshua Brown and wife alone. It covered Joshua Brown's interest mortgaged to Dee, and his interest mortgaged to Boner, but the mortgage was junior to their mortgages. It also covered other land, upon which it was the first lien. The land mortgaged to Dee was in section 16, and the land mortgaged to Boner was in section 21, and will be designated hereafter by the number of the sections. The attorneys, in preparing the decree in James Brown's foreclosure, conceived the idea that that decree, and also the one in favor of Dee, and the one in favor of Boner, could be satisfied by one sale. They accordingly drew the decree so as to provide that there should first be offered and sold the individual four-fifths of the tract in section 16, and the proceeds be applied, first, in payment of Dee, and any excess in the payment of James Brown, the plaintiff in execution; and that there should then be offered and sold the undivided four-fifths of the tract in section 21, and that the proceeds be applied, first, in the payment of Boner, and any excess in the payment of James Brown. The sale was made under this decree.

Now, this was wrong; because J. K. Brown's land could

not be properly sold, even to pay his own debt, under a decree to which he was not a party, and much less to pay a debt not due from him, nor a lien upon his land. The court was right, therefore, in treating the sale of J. K. Brown's interest invalid. We think it was right, also, in treating the sale, as an entirety, invalid. This action was brought by him for the purpose of obtaining a decree to the effect that the sale *as to him* was invalid, and he complains of the court because the court went further, as prayed in the cross-petition, and entered a decree treating the sale, as an entirety, invalid. He claims that the joint debt due from him and Joshua Brown to Dee, and the joint debt due from them to Boner, should remain satisfied, as in form they appear to be; and he insists that this is right, even though the purchaser gets only the undivided two-fifths interest of Joshua Brown. His position is that that was all that could be properly sold under the purchaser's decree, and all that was in fact sold, and that there was no necessity that the purchaser should make any mistake about it, and no evidence that he did make any mistake about it, and that, if he bid too much it was his own folly. In support of his position that only Joshua Brown's two-fifths interest was in fact sold, he relies upon a provision in the decree that Joshua's interest should be sold, and also upon the fact that the execution ran against his interest. But the transaction, taken as a whole, shows clearly enough that the intention was to sell the undivided four-fifths. Indeed, the plaintiff himself avers in his petition that, in making the sale of the interest of Joshua Brown in said real estate, such interest was described as the undivided four-fifths. This, we think, is not strictly true; but it does appear to be true to this extent: that what was sold was regarded as the undivided four-fifths interest; and the plaintiff cannot, we think, be heard now to claim to the contrary. The sale having been so made, it was properly, we think, held invalid in its entirety. This ruling left the decree in favor of Dee, and the decree in favor of Boner,

virtually still in force, to be satisfied, as they should have been originally, by an execution issued upon each. And, inasmuch as Dee and Boner had been paid by the purchaser, James Brown, it was proper that he should be subrogated to their rights. This, it seems to us, does substantial equity, and the decree below must be

AFFIRMED.